# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| **MELVIN J. ROBISON,** | **CV-11-91-BLG-RFC-CSO** |
| **Plaintiff,** | |
| | **Findings and Recommendation of United States Magistrate Judge** |
| v. | |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | |

Plaintiff Melvin Robison [Robison] seeks judicial review of the Defendant Commissioner of Social Security's [Commissioner] denial of his application for disability insurance benefits [DIB] under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. *Court Doc. 1.* Judge Cebull referred this case to the undersigned for recommendations for disposition. *Court Doc. 11.*

Now pending are the parties' cross-motions for summary judgment. For the reasons stated below, it is recommended that Robison's motion be denied, the Commissioner's motion be granted, and the denial of Robison's DIB be affirmed.

# I.  PROCEDURAL BACKGROUND

Robison is a 68 year-old man (58 at his alleged onset date on March 31, 2003) (*Tr. at 478*), who suffers from diabetes, bilateral degenerative changes of the knee, obesity, major depressive disorder and anxiety disorder. *Court Doc. 17* at 3; *Tr. at 15*.

Robison filed a claim for DIB on March 9, 2005, alleging an onset date of March 31, 2003. *Tr. at 107-110*. On December 26, 2006, ALJ Kilroy found Robison not disabled. *Tr. at 58-67*. After Robison requested a review by the Appeals Council, the case was remanded to recreate his file, which had been lost. *Tr. at 69-72*.

ALJ Hartford conducted a second hearing on July 16, 2009. *Tr. at 436-64*. In a decision dated September 14, 2009, ALJ Hartford also found Robison not disabled. *Tr. at 80-92*. Robison again requested review by the Appeals Council, and on February 18, 2010, the Appeals Council remanded the claim for a new hearing and decision. *Tr. at 95-97*.

ALJ Kilroy conducted a third hearing on July 7, 2010. *Tr. at 465-519*. After that hearing, ALJ Kilroy again found that Robison was not disabled. *Tr. at 10-23*. Robison once more requested review by the

Appeals Council on December 23, 2010. *Tr. at 25.* On July 1, 2011, the

Appeals Council denied the request for review. *Tr. at 6-9.* Robison now

seeks a review by this Court.

## II.    **STANDARD OF REVIEW**

This Court's review is limited. The Court may set aside the

Commissioner's decision only where the decision is not supported by

substantial evidence or where the decision is based on legal error. *Ryan*

*v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. §

405(g). "Substantial evidence is more than a mere scintilla, but less

than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211,

1214 n. 1 (9th Cir. 2005) (internal quotations omitted)). "It is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks and citation

omitted).

This Court must consider the record as a whole, weighing both the

evidence that supports and detracts from the Commissioner's

conclusion, and cannot affirm the ALJ "by isolating a specific quantum

of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

(9th Cir. 2006) (internal quotation marks and citation omitted). The

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Hegel v. Astrue*, 325 Fed.Appx. 580 (9th Cir. 2009) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

"Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted). The Court is not permitted to re-weigh the evidence.

## III.   <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr.,* 223 F.3d 968, 974 (9th Cir. 2000)

(citing 42 U.S.C. § 1382c(a)(3)(A)-(B)); 20 C.F.R. § 416.905(a).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

1. The claimant must show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis must proceed to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If an adjustment to other work is

possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Tackett*, 180 F.3d at 1099. The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.; *Tackett,* 180 F.3d at 1099. If the Commissioner is unable to meet this burden, then the claimant is disabled and entitled to benefits. *Tackett,* 180 F.3d at1099.

## IV.     THE ALJ's OPINION

In determining that Robison was not eligible for DIB, the ALJ followed the applicable sequential evaluation process for determining disability. *Tr. at 13-23*; *Tackett*, 180 F.3d at 1098-99. First, the ALJ found that Robison had five severe impairments: (1) diabetes, (2) bilateral degenerative changes of the knees, (3) obesity, (4) major depressive disorder, and (5) anxiety disorder NOS. *Tr. at 15*.

Second, the ALJ found that none of these impairments, nor a combination thereof, met or medically equaled the listed impairments in

10 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. at 16-17.* The ALJ explained that in reaching his conclusion, he considered criteria of listings 12.04, 12.06, but found that "the claimant's mental impairments, considered singly and in combination, did not meet or medically equal" those criteria. *Id.* He also considered the "Paragraph B" criteria, but found that they were not satisfied. *Id.*

Next, the ALJ found that Robison has the residual functional capacity [RFC] to perform sedentary through medium work, as defined in 20 C.F.R. §§ 404.1567(c). *Tr. at 17-22.* The ALJ qualified this with a number of specific limitations including that Robison should "perform in positions that did not require him to work with large numbers of people at any one time, and he could not perform positions involving high constant focus or high constant stress." *Tr. at 17.* The ALJ then discussed those qualifications and his reasons for finding Robison's specific RFC. *Tr. at 17-22.*

The ALJ then found that Robison was not capable of performing past relevant work. *Tr. at 21.* The ALJ explained, however, that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from

past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy." *Tr. at 22.*

The ALJ then discussed the testimony of the vocational expert [VE] under the framework of the Medical-Vocational Guidelines, Rule 203.16 and 203.08. *Tr. at 22-23.* Through that analysis, the ALJ established that a finding of "not disabled" was appropriate under the framework, and concluded that Robison "has not been under a disability, as defined by the Social Security Act, at any time from March 31, 2003, the alleged onset date, through December 21, 2008, the date last insured." *Tr. at 23.*

## V.     THE PARTIES' ARGUMENTS

### A.     Robison's Arguments

Robison makes three arguments. First, he argues that the ALJ failed to give proper weight to the opinions of Drs. Amstutz and Carlson. *Court Doc. 16* at 7-18. Robison argues that these doctors are treating physicians and therefore their opinions are entitled to controlling weight. *Id.* at 8. Robison argues that "the ALJ gave no significant weight" to these opinions, and rejected them without citing the specific or convincing reasons he is required to provide before

rejecting such opinions. *Id.* at 8-13. Robison argues that because Drs. Amstutz and Carlson are psychiatrists, their opinions are necessarily based on Robison's subjective complaints, which is therefore not a good reason for rejecting them. *Id.* at 12-14.

Robison also argues that the "opinions from the one-time examining psychologist and non-examining psychologist who testified at Mr. Robison's hearing are not substantial evidence to overrule the opinions from the treating psychiatrists." *Id.* at 14. Robison therefore argues that the opinions of Drs. Martin and Mozer do not constitute substantial evidence to support the ALJ's rejection of the opinions of Drs. Amstutz and Carlson. *Id.* at 13-17. Robison argues that the treating psychiatrists' opinions that Robison has "marked or moderate limitations in nearly all daily mental activities are well-supported by clinical and objective diagnostic techniques and not contradicted by other substantial evidence in the record" and should therefore be given controlling weight. *Id.* at 17.

Second, Robison argues that the ALJ failed to properly evaluate Robison's credibility. *Id.* at 18-22. Citing *Lingnefelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), Robison argues that the ALJ must

provide "clear and convincing" reasons for finding a claimant not credible. *Id.* at 19. Robison argues that the ALJ failed to provide such reasons with the specificity required. *Id.* at 19-22. Robison also argues that the ALJ failed to apply the correct legal standard, because he evaluated the consistency of Robison's statements against the ALJ's own RFC assessment rather than the evidence of record. *Id.* at 20. Robison argues that there is substantial evidence in the record to support his credibility and his testimony. *Id.* at 21-22.

Third, Robison argues that the ALJ relied on flawed VE testimony. *Id.* at 22-26. Robison argues that because the ALJ failed to take the limitations described by Drs. Amstutz and Carlson into account, the hypothetical questions posed to the VE did not include all of Robison's limitations. *Id.* at 23. Robison argues that the VE based his testimony on hypotheticals that incorrectly described both Robison's physical and mental limitations. *Id.* at 24-25.

For these three reasons, Robison argues that his motion for summary judgment should be granted, and the Commissioner's decision should be reversed and remanded solely for the calculation and

awarding of benefits – or in the alternative, for a new hearing. *Id.* at 26.

### B.   The Commissioner's Arguments

The Commissioner makes five arguments.  First, the Commissioner argues that substantial evidence supports the ALJ's RFC finding. *Court Doc. 18* at 3-5.  The Commissioner argues that the opinions of Drs. Mozer and Martin, in addition to Robison's own testimony, provide substantial evidence to support the ALJ. *Id.* at 4-5.

Second, the Commissioner argues that it was reasonable for the ALJ to give little weight to the opinions of Drs. Amstutz and Carlson. *Id.* at 6-8.  The Commissioner argues that the opinions of both doctors were contradicted by other parts of the record, including both doctors' own treatment notes. *Id.*

Third, the Commissioner argues that the ALJ weighed Robison's testimony against the evidence in the record and made a reasonable conclusion determining that Robison was not fully credible. *Id.* at 8-11.  The Commissioner takes issue with Robison's assertion that there must be "clear and convincing" reasons for the ALJ's credibility finding. *Id.* at 9, n.3.  Citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-6 (9th Cir.

1991)(*en banc*), the Commissioner argues that credibility findings must only be "properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Court Doc. 18* at 9, n.3. The Commissioner argues that while some panels of the Ninth Circuit have used the "clear and convincing" standard, only an *en banc* panel may overturn existing Ninth Circuit precedent like *Bunnell*. *Id.* (*citing United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995). The Commissioner therefore argues that *Bunnell* holds the applicable standard for evaluating the ALJ's credibility findings, and that the ALJ's opinion meets those standards. *Court Doc. 18* at 8-11.

Fourth, the Commissioner argues that the ALJ properly considered persuasive VE testimony. *Id.* at 11. The Commissioner argues that the ALJ's other findings were supported, and therefore the VE's testimony was not flawed. *Id.* For these four reasons, the Commissioner argues that his Motion for Summary Judgment should be granted. *Id.* at 13.

Fifth, the Commissioner argues that in the event the Court finds error with the ALJ (which the Commissioner does not concede) the appropriate remedy is remand for additional findings and not an award of benefits. *Id.* at 11-13.

## VI.    DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. Applying controlling Ninth Circuit authority, the Court concludes that the ALJ's decision is based on substantial evidence and contains no legal error. For the reasons set forth below, the Court finds Robison's arguments unpersuasive.

### A.    The ALJ gave proper weight and consideration to the opinions of Drs. Amstutz and Carlson.

Robison argues that the opinions of Drs. Amstutz and Carlson were entitled to controlling weight because they were Robison's treating physicians, and that it was error for the ALJ not to do so. *Court Doc. 16* at 7-18. A treating source is defined as a "physician, psychologist, or other acceptable medical source" who has provided a claimant with "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" the claimant. 20 CFR § 404.1502; *see also*

SSR 96-2p. The parties agree that Drs. Amstutz and Carlson are treating physicians. *Court Doc. 18* at 6-7; *Court Doc. 16* at 8-9.

The Ninth Circuit has held that "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons.' " *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject his opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d at 830.

In general, if a medical opinion is inconsistent with other substantial evidence in the record, or is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" then it is not entitled to controlling weight. SSR 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief or unsupported by clinical findings. *Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may also reject a physician's opinion if it is based upon a claimant's subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ specifically discussed the opinions of Drs. Amstutz and Carlson at length. *Tr. at 20-21*. The ALJ noted that Dr. Amstutz opined several times that Robison was incapable of working, but two of these opinions came after the date last insured and therefore are "of little probative value." *Tr. at 20*. The other opinions given by Dr. Amstutz "conflict with the contemporaneous medical records in the file" and with Dr. Amstutz's own notes. *Id.* For example, in May 2007 Dr. Amstutz wrote that Robison had marked limitations and would miss work more than three times a month, but a month later wrote that Robison's depression was well-controlled; he was doing well, and was staying busy that summer with camping. *Id.* (*citing Tr. at 287-294, 295*).[1] The ALJ highlighted other specific inconsistencies and concluded

_____

[1] In his Statement of Uncontroverted Facts, Robison notes that in April 2006, Dr. Amstutz noted he had "a lot of fatigue and loss of interest in activities he used to enjoy such as outdoor activities and RV camping." *Court Doc. 17 at 7, ¶ 20 (citing Tr. at 285)*. What Dr. Amstutz's note actually stated was: "Has not found much in the way of activities since his retirement. He does enjoy outdoor activities and RV camping." *Tr. at 285*. As noted by the ALJ, this note conflicts somewhat with

that he would give "no significant weight to the opinions of Dr. Amstutz because of such inconsistencies. *Tr. at 20.*

The ALJ also noted inconsistencies and problems with Dr. Carlson's opinions. *Tr. at 21.* The ALJ pointed out that while Dr. Carlson did see Robison in February 2006, he "did not perform a mental status exam or other test to evaluate his symptoms" before making the conclusion on that date that the Robison could not work. *Id.* (*citing Tr. at 283-284*). In addition, the ALJ found that Dr. Carlson's opinion in that February 2006 note was inconsistent with records dated shortly before and after that date. *Id.* (*citing Tr. at 281, 285-286*). Five months prior, in August of 2005, Dr. Carlson had noted that Robison described himself as doing well. *Id.* (*citing Tr. at 281*). Two months later, in April of 2006, a mental status exam indicated that "although he was anxious and mildly distressed, his memory was intact, his intellect was deemed above average, his fund of knowledge was good, and his insight and judgment were good." *Id.* (*citing Tr. at 285*). For these reasons, the ALJ gave "little weight" to Dr. Carlson's opinion.

---

Robison's testimony that he "[hadn't] had [his] RV out or been in the mountains maybe July of '01 was the last time I was in the mountains." *Tr. at 487-88.*

Plaintiff's Statement of Uncontroverted Facts suggests that "Dr. Carlson encouraged him to look into Social Security disability." *See Court Doc. 17 at 5, ¶ 15.* Dr. Carlson actually first noted in that report that Robison was wondering about Social Security disability, and that Dr. Carlson thought "it might be kind of a battle with Social Security for him." *Tr. at 229.* Dr. Carlson later stated that he encouraged Robison to look into the Social Security issue because "[i]t certainly will not do any harm to that." *Id.* Dr. Carlson then stated that he would not be scheduling Robison for another visit for six months.

The Court is persuaded that substantial evidence supports the ALJ's conclusion that the medical opinions of Drs. Amstutz and Carlson are therefore inconsistent with other substantial evidence in the record and thus not entitled to controlling weight. SSR 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Court finds that the ALJ thus provided "specific and legitimate reasons" for his determination not to give the opinions of Drs. Amstutz and Carlson controlling weight. *Lester v. Chater*, 81 F.3d at 830. The Court has reviewed the records cited by the ALJ and concludes that the ALJ's reasons are supported by substantial evidence in the record. *Id.* The ALJ therefore did not err by

refusing to give the opinions of Drs. Amstutz and Carlson controlling weight.

**B. The ALJ properly considered inconsistencies in the record to assess Robison's credibility.**

Robison argues that the ALJ improperly found that his testimony was not entirely credible. *Court Doc. 16* at 18-22. The ALJ may, after engaging in the appropriate analysis, reject a claimant's subjective testimony about the severity of symptoms, but he must cite specific, clear, and convincing reasons for doing so. *Lockwood v. Comm'r Soc. Sec.,*397 Fed. Appx. 288 (9th Cir. 2010).[2] To assess credibility in this manner, the ALJ may consider ordinary evaluation techniques, including any unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."

---

[2] Robison argues that the standard to apply here is "clear and convincing" while the Commissioner argues it is *Brunnell*'s standard of non-arbitrariness. *Court Doc. 16* at 19; *Court Doc. 18* at 9, n.3. The Court does not find it necessary to decide this issue here, as the ALJ's reasons meet both standards.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

The ALJ may take the lack of objective medical evidence into consideration when assessing credibility. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004). Inconsistencies in testimony may also be factored in such an assessment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). The ALJ must also consider the following factors: the location, duration, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities. 20 C.F.R. § 416.929(c)(3).

Here, the ALJ gave specific, clear, and convincing reasons for finding that Robison's testimony about the "intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC finding. *Tr. at 18.* The ALJ also explained that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statement based on a consideration of the entire record." *Id.* Thus, the ALJ is not, as Robison suggests (*Court Doc. 16* at 20), evaluating Robison's credibility against the ALJ's own RFC, but rather against the record as a whole, which is what lead the ALJ to the RFC finding. *Id.*

The ALJ highlighted Robison's inconsistent statements as well as inconsistencies between medical findings and the symptoms that Robison alleged. *Tr. at 18-21.* The ALJ explicitly discussed both Robison's physical (*Tr. at 18-19*) and mental (*Tr. at 19-21*) impairments and the medical evidence supporting them. The ALJ compared Robison's testimony about his limitations to the medical evidence, citing extensively to the medical record. *Tr. at 18-21.*

For example, the ALJ highlighted that Robison "has described activities which are not limited to the extent one would expect given his complaints of disabling limitations." *Tr. at 18.* This includes Robison's own Function Report, in which he wrote that "he had no problems with personal care, could do chores, shopped in stores, and went camping, hunting, and fishing." *Tr. at 18 (citing Tr. at 133-141).* The ALJ also

noted that the physical exams and notes from October 2007, and February, June, and December of 2008 do "not substantiate the claimant's subjective allegations of disabling limitations." *Tr. at 19* (*citing Tr. at 306-377*).

As to Robison's mental limitations, the ALJ explained that "the thrust of his testimony was that he had difficulty handling large crowds." *Id.* The ALJ points out, however, that Robison also stated "he is capable of leaving home and shopping in stores several times per week" and that he had "a couple of hunting buddies, suggesting limited symptoms in this area." *Tr. at 19* (*citing Tr. at 133-141, 253-257*).

The Court has reviewed all of the specific examples cited and discussed by the ALJ and finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, for finding Robison's testimony not entirely credible. Thus, the ALJ did not err.

C. **ALJ did not err in presenting the hypothetical questions to the vocational expert.**

Robison argues the ALJ erred in posing to the VE hypothetical questions that did not "include all of Mr. Robison's mental limitations reasonably borne out by the record as described in the treatment notes." *Court Doc. 16* at 23. The Court has already found, *supra*, that the ALJ

did not err in his assessment of Robison's credibility regarding his

symptoms and limitations, nor in giving less weight to the inconsistent

opinions of Drs. Amstutz and Carlson. Therefore, the ALJ was not

required to include these limitations in his hypothetical question.

*Ostenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is

free to accept or reject restrictions in a hypothetical question that are

not supported by substantial evidence."). Rather, the ALJ relied upon

the substantial medical evidence, discussed below, for purposes of

framing the hypothetical. *Tr. at 13-23.* The ALJ was permitted to do

this, and thus he did not err.

**D. Substantial evidence supports the ALJ's finding of not disabled.**

The Court finds that the ALJ's decision is supported by

substantial evidence from the record. The ALJ issued a thoughtful,

detailed decision that includes a thorough discussion of relevant

medical evidence, opinions, and testimony. *Tr. at 13-23.*

In evaluating Robison's claims, the ALJ was required to "make

fairly detailed findings in support" of his decision that would "permit

courts to review those decisions intelligently." *Vincent v. Heckler*, 739

F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ

does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

A reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) (*citing Robins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). But a court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* (*citing Connett v. Barnhart*, 340 F.3d 871,874 (9th Cir. 2003)).

As discussed above, the ALJ did not err in giving the opinions of Drs. Amstutz and Carlson less than controlling weight, or in assessing Robison's testimony as not entirely credible. Thus, the ALJ was left with the opinions of Drs. Mozer and Martin upon which to base his RFC. *Tr. at 17, 19-21.*

Robison objects to the ALJ's reliance on these doctors as they were "a one-time examining psychologist and a non-examining psychologist."

*Court Doc. 16* at 14. This argument ignores, however, the explicit order

from the Appeals Council to the ALJ instructing him to "obtain evidence

from a medical expert to help resolve the inconsistencies in the record

with respect to the claimant's physical and mental impairments." *Tr. at*

*96.* As the conflicting opinions of Drs. Amstutz and Carlson were

available at the time of this Appeals Decision, and discussed in the

underlying ALJ Order from September 14, 2009 (*see e.g. Tr. 88-89*) the

Court can conclude that these opinions were one such inconsistency that

needed clarification.

The ALJ confirms this in his acknowledgment of the Appeals

Council's instructions. *Tr. at 21.* He explains that:

> The Appeals Council also suggested that the undersigned obtain
> evidence from a medical expert to help resolve inconsistencies in
> the medical evidence. In this regard, the medical expert [Dr.
> Martin] testified that she did not find medical support for Dr.
> Amstutz's opinions regarding the claimant's significant mental
> limitations, and she noted that neither Dr. Carlson nor Dr.
> Amstutz referred the claimant to therapy or counseling for his
> mental limitations; this testimony suggests limited mental health
> symptoms and supports the undersigned's findings described
> above.

*Tr. at 21.* Given that Dr. Martin's opinions were specifically requested

to clarify inconsistencies like those created by Drs. Amstutz and

Carlson, it is reasonable that ALJ gave "great weight" to her opinions,

even over the inconsistent opinions of the treating physicians. *Tr. at 17*.

Similarly, Dr. Mozer's "limited findings" were consistent both with the reports that Robison made to him, and to the other medical evidence, including Dr. Martin's testimony. *Tr. at 20*. Dr. Mozer's opinions therefore did not suffer the same inconsistencies as the opinions of Drs. Amstutz and Carlson. It was therefore also reasonable for the ALJ to give the opinions of Dr. Mozer "great weight" over the problematic opinions of the treating physicians. *Tr. at 20*. Dr. Mozer found that Robison "does not seem to experience a great deal of problems with activities of daily living" and "has not slowed down much on his outdoor recreation, in spite of his mental difficulties." *Tr. at 256*.

For these reasons, the Court finds that Dr. Martin's opinions, in combination with the opinions of Dr. Mozer and the other medical evidence, as cited by the ALJ, provides substantial evidence to support the ALJ's determination. The ALJ reviewed the record and adequately explained his rationale for assessing Robison's functional capacity and credibility. *Tr. at 13-23*. The ALJ's decision reviewed the substantial evidence that informed and supported his conclusion with respect to Robison's disability claim. *Id*. Relying on this substantial evidence

from the record, the ALJ found that Robison is capable of sedentary through medium work, and therefore ineligible for benefits. *Tr. at 17*. The Court has reviewed these medical records cited by the ALJ. The Court finds that they support the ALJ's conclusion that Robison is not disabled. This Court finds, therefore, that the ALJ's decision is supported by substantial evidence.

## VII. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's decision denying DIB be affirmed, Robison's Motion for Summary Judgment (*Court Doc. 15*) be DENIED, and the Commissioner's Motion for Summary Judgment (*Court Doc. 19*) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 16th day of April, 2012.

**/S/ Carolyn S. Ostby**
United States Magistrate Judge